UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                    Case No.: 8:09-cr-508-VMC-AAS

ERIC J. SCOTT,
        Defendant,

        and

FAULHABER MICROMO LLC,
        Garnishee.

_____/

## ORDER

This matter comes before the Court pursuant to Defendant Eric Scott's two pro se motions titled "Request for Hearing on Writ of Garnishment" (Doc. # 223), and "Motion to Modify Restitution Payment Schedule and to Stay Wage Garnishment" (Doc. # 224), both filed on January 26, 2026. On February 12, 2026, the Government responded in opposition to both Motions. (Doc. # 226). On February 18, 2026, Mr. Scott filed a "supplemental response" in support of the Motions. (Doc. # 227). For the reasons that follow, the Motions are granted in part and denied in part.

1

I.    **Background**

In 2010, a jury found Mr. Scott guilty of bank fraud, wire fraud, and conspiracy to commit wire fraud and to defraud the United States. (Doc. # 136, 158). The Court sentenced Mr. Scott to 15 months' imprisonment, followed by 60 months of supervised release. (Doc. # 158 at 2-3). The Court also ordered Mr. Scott to pay $291,046.69 in restitution to the victim, Chase Home Finance. (Id. at 5). The restitution obligation consisted of (1) $146,903.16, joint and several with Gretchen R. Scott and Lakeisha Gates, and (2) $144,843.53, joint and several with Gretchen R. Scott. (Id. 5-6). The Court noted that the restitution amount of $144,843.53 was "to be offset by the future sale of the 40th Avenue property." (Id.).

On January 15, 2026, the Government filed an application for writ of garnishment, representing that Mr. Scott's outstanding restitution balance, inclusive of interest, was $227,234.57. (Doc. # 220 at 2). The Government sought a writ of garnishment upon Garnishee Faulhaber Micromo, LLC, for substantial nonexempt property belonging to or due to Mr. Scott. (Id.). Specifically, the Government sought garnishment of Mr. Scott's nonexempt disposable earnings, i.e., his wages. (Id.). After consideration, the Court granted the

2

Government's application. (Doc. # 221). On January 16, 2026, the Clerk of Court issued both (1) the Writ of Garnishment as to Garnishee, and (2) the Clerk's Notice of Garnishment. (Doc. ## 222, 222-1).

On January 26, 2026, Mr. Scott filed the instant Motions. (Doc. ## 223, 224). In his first Motion, Mr. Scott requests (1) a hearing on the Writ of Garnishment, under 28 U.S.C. § 3202(d), and (2) a stay on wage garnishment pending resolution of his motion to modify restitution. (Doc. # 223 at 2). In support, Mr. Scott asserts that garnishment would impose undue hardship and that the restitution balance being enforced is incorrect because credits from sold properties have not been applied. (Id. at 1).

In his second Motion, Mr. Scott requests (1) a stay on wage garnishment (i.e., repeating his request in the first Motion), (2) a modification of his restitution payment schedule pursuant to 18 U.S.C. § 3664(k), including a six-month suspension of payments, (3) an accounting of restitution reflecting application of all credits from sold properties, and (4) a status review after the six-month period to reassess Mr. Scott's ability to pay. (Doc. # 224 at 3). In support, Mr. Scott argues that he has experienced a material change in economic circumstances not contemplated at the time

restitution was imposed. (Id. at 1). Specifically, Mr. Scott states that (1) he provides financial support for two dependents, including a non-working spouse and a full-time student, and (2) he has ongoing medically necessary treatment for serious health conditions and that his medical expenses materially exceed those anticipated at sentencing. (Id. at 2). Further, Mr. Scott reiterates his assertion that the restitution balance being enforced is incorrect. (Id. at 3). According to Mr. Scott,

> Restitution was to be credited by proceeds from the sale of real properties, which would reduce the outstanding balance owed.

> These credits have not been applied, and the Government is enforcing an inflated restitution amount.

> Continued enforcement without correction of the restitution balance risks improper collection and warrants Court intervention.

(Id.). Finally, Mr. Scott provides his current "financial statement," indicating that his net monthly income after tax is approximately $3,800 to $4,000 and his monthly necessary expenses are approximately $4,250 to $4,325, inclusive of medical expenses. (Doc. # 224 at 5-6). This reflects a negative monthly cashflow of approximately $250 to $525.

4

On February 12, 2026, the Government responded in opposition. (Doc. # 226). The Government argues that Mr. Scott has not raised a cognizable basis for a hearing under 28 U.S.C. § 3202(d), and that courts routinely deny a garnishment hearing under these circumstances. (Id. at 4-7). Further, the Government argues that Mr. Scott has not carried his burden of showing a material change in circumstances to warrant a modified restitution payment schedule under 18 U.S.C. § 3664(k). (Id. at 7-10). Accordingly, the Government argues that the Court should deny Mr. Scott's requests for a hearing, a stay of wage garnishment, and a modification of restitution. (Id. at 10).

The Government also addresses Mr. Scott's argument that the restitution balance being enforced is incorrect. (Doc. # 226 at 4). First, the Government represents that, as of January 15, 2026, Mr. Scott's outstanding restitution balance was $227,234.57. (Doc. ## 220 at 2; 226 at 4 n.3). Next, the Government represents that after January 15, 2026, certain amounts have been credited to Mr. Scott's restitution balance, such that "his updated restitution balance is much lower." (Doc. # 226 at 4 n.3). Specifically, the Government represents that after January 15, 2026, "a co-defendant with whom Scott is jointly and severally liable, paid $86,557.52"

toward the outstanding restitution balance. (Id.). Furthermore, after January 15, 2026, the Government further investigated "whether Scott received credit for the sale of the 40th Avenue Property," and notified the Clerk of Court that the sale amount was $45,000. (Id.). The Government represents that the amount of $45,000 has since been credited to Mr. Scott's restitution balance, and backdated to ensure no additional interest accrued. (Id.). According to the Government, the victim is still owed $86,543.28, plus interest, as of February 12, 2026. (Id. at 4, ¶ 8).

On February 18, 2026, Mr. Scott filed a pleading titled "Supplemental Response and Proposal for Voluntary Structured Payment Plan in Lieu of Garnishment." (Doc. # 227). The Court notes that "[e]xcept for a reply to a motion for summary judgment or a reply brief in a social security case, no party may reply without leave." M.D. Fla. Local Rule 3.01(d). Though Mr. Scott pleading appears to be a "reply" in support of his request for modification of his restitution payment schedule, the Court will exercise flexibility in considering the Supplemental Response.

In the Supplemental Response, Mr. Scott provides some additional information about his economic circumstances. (Id. at 2). As to his medical expenses, he states that he is

undergoing ongoing treatment for a serious chronic medical condition requiring continuous care and prescription medication, and that his monthly medical expenses fluctuate from approximately $100 to more than $2,000. (Id.). As to other expenses, Mr. Scott states that his residence sustained damage during Hurricane Milton, and that insurance did not fully cover the loss. (Id.). He states that he "incurred approximately $8,000 in unreimbursed repair expenses," that he "was required to obtain a loan of approximately $15,000 to replace the roof," and that the loan requires monthly payments of $279. (Id.).

He recalculates his "fixed monthly expenses" as $4,241, excluding his medical expenses. (Id. at 3). Mr. Scott acknowledges that his restitution payments "were not made consistently" due to financial instability related to medical and hurricane expenses, but represents that he made a "good faith restitution payment" of $200 on February 17, 2026 and intends to resume consistent payments. (Id. at 4). Finally, Mr. Scott proposes that, in lieu of employer wage garnishment, he will instead agree to make "voluntary automatic electronic payments of $250 per month, beginning immediately." (Id.).

With this record in mind, the Court now addresses each of Mr. Scott's requests.

## II.  Analysis

### A. Request for Hearing and Accounting

"The Federal Debt Collection Procedures Act provides the exclusive civil procedures for the United States' to obtain satisfaction of a judgment in a criminal proceeding that imposes a fine, assessment, penalty, or restitution in favor of the United States." United States v. Duran, 701 F.3d 912, 915 (11th Cir. 2012) (internal quotation marks and citations omitted). One such procedure involves "a writ of garnishment against property (including nonexempt disposable earnings) in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor." 28 U.S.C. § 3205(a).

"Upon commencing an action to recover property under the FDCPA, the government must prepare, and the clerk of court must issue notice to the judgment debtor with specific statutory language, including notice that a hearing must be requested within 20 days of receiving notice." United States v. Peters, 783 F.3d 1361, 1363-64 (11th Cir. 2015) (citing 28 U.S.C. § 3202(b)).

Here, the Government obtained the Writ of Garnishment pursuant to Section 3205. See (Doc. # 221). Mr. Scott's request for a hearing is timely, because his Motion was filed

8

10 days after the Clerk's Notice of Garnishment was entered. See (Doc. ## 222-1, 223).

If a hearing is requested, the "court that issued such order *shall* hold a hearing." 28 U.S.C. § 3202(d) (emphasis added). The issues at such a hearing shall be limited:

> (1) to the probable validity of any claim of exemption by the judgment debtor;
>
> (2) to compliance with any statutory requirement for the issuance of the postjudgment remedy granted; and
>
> (3) if the judgment is by default and only to the extent that the Constitution or another law of the United States provides a right to a hearing on the issue, to-
>
> (A) the probable validity of the claim for the debt which is merged in the judgment; and
>
> (B) the existence of good cause for setting aside such judgment.

Id. Here, Section 3202(d)(3) is inapplicable because the judgment of restitution against Mr. Scott is not by default. Accordingly, Mr. Scott may only request a hearing on the issues under Section 3202(d)(1) or Section 3202(d)(2).

The Government argues that Mr. Scott's request for a hearing should be denied "because Scott presents no valid claim for exemption and there is no dispute that the government complied with the procedural requirements of the

9

statute." (Doc. # 226 at 7). Indeed, Mr. Scott's Motion does not assert that the wages the Government seeks to garnish fall into any specified exempt categories. See (Doc. # 223), see also 18 U.S.C. § 3613(a)(1)-(3) (specifying exempt categories).

Mr. Scott's Motion also does not explicitly assert that the Government failed to comply with the statutory requirements for the issuance of the Writ of Garnishment. See (Doc. # 223). Nonetheless, Mr. Scott's assertion that the Government is enforcing the incorrect restitution balance could arguably be construed as a challenge to the Government's compliance with the statutory requirements. See 28 U.S.C. § 3205(b)(1) ("The United States shall include in its application for a writ of garnishment . . . the nature and amount of the debt owed."). To the extent the Government's application for writ of garnishment (Doc. # 220) included the incorrect restitution balance, the Government's application arguably failed to comply with Section 3205(b)(1)(B). That said, the Government's representations indicate that the restitution balance cited in its application was correct as of January 15, 2026, and that the restitution balance was later updated due to intervening developments that happened after January 15, 2026. (Doc. # 226 at 4 n.3). However, the

10

Government's representations also indicate that proceeds from the sale of the 40th Avenue property were credited later than they should have been, and that the credit needed to be backdated "to ensure no interest accrued for that amount from that date on." (Id). These issues counsel in favor of Mr. Scott's request for an accounting of the restitution balance.

Even assuming Mr. Scott has not challenged the Government's compliance with the statutory requirements, a hearing is likely still required. There is conflicting precedent from the Eleventh Circuit on whether a hearing is required, even if the defendant fails to raise a cognizable basis under Section 3202(d). Compare United States v. Lopez, 672 F. App'x 910, 914 (11th Cir. 2016) ("Because Lopez failed to raise even a colorable claim that the Government failed to comply with a statutory notice requirement or that he had a colorable claimed exemption, we cannot say that the district court erred by failing to hold a hearing."), with United States v. Gomez, 733 F. App'x 998, 999 (11th Cir. 2018) ("The district court denied Gomez's request for a hearing, reasoning that neither of those matters is at issue in the case given Gomez's failure to claim an exemption. *But the verb 'shall' in a statute is a command, which creates an obligation not subject to judicial discretion.* Here, the

11

district court erred in denying Gomez's request for a hearing because the statutory language mandates a hearing on a writ of execution when requested within 20 days, and pursuant to Gomez's affidavit, his request for a hearing was timely. The fact that Gomez had not yet claimed an exemption ought not to have foreclosed his ability to make such a claim at a hearing." (emphasis added) (citations omitted)). The Court notes that both Lopez and Gomez are unpublished decisions.

Other district courts within this circuit have also taken different positions on whether a hearing is required under these circumstances. Compare United States v. Colin, No. 6:17-cr-78-GAP-LHP, 2022 WL 2527327, at *3 (M.D. Fla. July 7, 2022) ("In the absence of a colorable claim for exemption or argument that the United States failed to comply with procedural directives, the Court need not hold a hearing." (citing Lopez, 672 F. App'x at 914)), with United States v. Ala. Middle Fed. Defs. Program, Inc., No. 2:21-MC-3936-WKW-SMD, 2021 WL 3629997, at *2 n.4 (M.D. Ala. Aug. 10, 2021) (noting the conflict between Lopez and Gomez, and stating that "out of an abundance of caution, the undersigned held a hearing on Murphy-Thomas's objections despite the fact that they did not allege that her income is subject to an exemption or that the Government failed to comply with any

12

statutory notice requirement."), report and recommendation adopted sub nom. United States v. Murphy-Thomas, No. 2:21-MC-3936-WKW, 2021 WL 3751156 (M.D. Ala. Aug. 24, 2021).

Here, considering Gomez and out of an abundance of caution, the Court grants Mr. Scott's request for a hearing. (Doc. # 223). The issues at the hearing shall be limited to those specified in 28 U.S.C. § 3202(d). At the hearing, the Government should provide the amount of the outstanding restitution owed by Mr. Scott (as required by § 3205(b)(1)), and should provide an accounting of all credits to be applied to the restitution balance. The Court will schedule the hearing for March 25, 2026, at 2 p.m.

B. **Request to Modify Restitution Schedule and Stay Wage Garnishment**

"Pursuant to 18 U.S.C. § 3664(k), a defendant who is ordered by the district court to pay restitution may notify the court of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution." United States v. Maestrelli, 156 F. App'x 144, 145 (11th Cir. 2005) (quotation marks omitted). "But it must be 'a bona fide change in the defendant's financial condition,' such that 'his present financial status is . . . different from that contemplated by the district court when

13

it imposed the restitution order.'" United States v. Mathias, No. 23-14211, 2025 WL 1823237, at *3 (11th Cir. July 2, 2025) (quoting Cani v. United States, 331 F.3d 1210, 1215–16 (11th Cir. 2003)). "A defendant who disputes his ability to pay restitution bears the burden of demonstrating his financial resources by a preponderance of the evidence." United States v. Brand, 163 F.3d 1268, 1280 (11th Cir. 1998) (quoting United States v. Twitty, 107 F.3d 1482, 1494 n.14 (11th Cir. 1997)).

Here, Mr. Scott has not demonstrated a material change in his economic circumstances within the meaning of Section 3664(k). As an initial matter, his Motions and Supplemental Response do not provide any evidence or documentation to demonstrate his financial resources or economic circumstances. Bare assertions, unsupported by detail or evidence, are insufficient to establish a material change in economic circumstances under Section 3664(k). See Id. (requiring the defendant to prove a material change by a preponderance of evidence); see also United States v. Barnes, No. 22-CR-101-WKW, 2025 WL 684272 at *1 (M.D. Ala. Mar. 3, 2025) ("[Defendant's] lone assertion, without any supporting facts, is insufficient to demonstrate a material change in her economic circumstances.").

14

Even accepting his representations as true, Mr. Scott has not demonstrated that his present financial condition is materially worse than that contemplated at sentencing. In his Motions, Mr. Scott states that his net monthly income after tax is approximately $3,800 to $4,000 and that his monthly "necessary expenses" are approximately $4,250 to $4,325, inclusive of $400 for medical expenses. (Doc. # 224 at 5-6). This reflects a negative monthly cashflow of approximately $250 to $525. In contrast, the Government represents that Mr. Scott had a negative monthly cash flow of $565 at the time of his sentencing in 2010. (Doc. # 226 at 8) (citing the presentence investigation report prepared by the United States Probation Office at the time of Mr. Scott's sentencing). Thus, Mr. Scott's economic circumstances reflect that his current negative cash flow ($250 to $525) is less burdensome than his negative cash flow in 2010 ($565). Moreover, the Government represents that Mr. Scott had three dependents, including two minor children, at the time of his sentencing in 2010 (Id. at 8-9), which was more burdensome than the two dependents (i.e., a non-working spouse and a full-time student) that Mr. Scott currently supports.

Mr. Scott's Supplemental Response does not materially change this analysis. (Doc. # 227). In that pleading, he

15

identifies additional monthly expenses not previously included in his stated "necessary expenses," including $70 for life insurance and $279 for a "roof loan." (Id. at 3). He explains that the $279 payment corresponds to a $15,000 loan he was "required to obtain" following hurricane-related damage to his residence. (Id. at 2). Yet he represents that his unreimbursed repair costs totaled approximately $8,000. (Id.). The Supplemental Response therefore suggests that the loan exceeded the repair costs by roughly $7,000. Mr. Scott does not account for this discrepancy, does not explain how the additional loan proceeds were used, and does not address whether any portion of those funds remains available to offset his claimed financial strain. Absent such explanation or supporting documentation, these additional assertions do not establish a material change in his economic circumstances.

Even crediting the newly asserted expenses, the result is unchanged. Adding the $70 "life insurance" and $279 "roof loan" expenses to the expenses Mr. Scott previously disclosed would yield a negative monthly cash flow of approximately $599 to $874. At sentencing in 2010, however, Mr. Scott had a negative monthly cash flow of $565. Thus, the current figures reflect an increased burden ranging from $34 to $309. Given the wide breadth of that range and the absence of

16

evidence or documentation, the Court cannot conclude that Mr. Scott's present economic circumstances are materially worse than that contemplated at sentencing.

Accordingly, Mr. Scott has not shown by a preponderance of evidence that his present economic circumstances are materially worse than those contemplated by the Court at the time the restitution order was imposed. Because Mr. Scott has not demonstrated a *bona fide* material change in his economic condition, Section 3664(k) provides no basis for a modification of his restitution obligation. Thus, the Court denies Mr. Scott's request for modification of his restitution payment schedule. (Doc. # 224).

Likewise, a stay of wage garnishment is not warranted. "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants." Valdes v. Accounts Receivable Res., Inc., No. 19-cv-80673, 2020 WL 13444021, at *1 (S.D. Fla. Jan. 7, 2020) (quoting Landis v. North Am. Co., 299 U.S. 248, 254-55 (1936)). The decision of whether to stay a case "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Landis, 299 U.S. at 254-55. Here, because Mr. Scott has not

demonstrated that modification of the restitution payment schedule is warranted, the Court denies Mr. Scott's request to stay wage garnishment. (Doc. ## 223 at 2; 224 at 3).

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Mr. Scott's "Request for Hearing on Writ of Garnishment" (Doc. # 223) is **GRANTED** in part and **DENIED** in part. The Court grants the request for a hearing, and will schedule the hearing for March 25, 2026, at 2 p.m. The Court denies the request to stay wage garnishment.

(2)   Mr. Scott's "Motion to Modify Restitution Payment Schedule and to Stay Wage Garnishment" (Doc. # 224) is **GRANTED** in part and **DENIED** in part. The Court grants the request for an accounting of restitution, including application of all credits from sold properties. The Government should provide the accounting at the hearing. The Court denies the requests to modify the restitution payment schedule and to stay wage garnishment.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 4th day of March, 2026.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE